

# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

| | |
|---|---|
| KAREN FINLEY, IN HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SUSAN M. FINLEY AND IN HER CAPACITY AS TRUSTEE OF THE SUSAN M. FINLEY LIVING TRUST DATED OCTOBER 1, 2002, | No. ED109676 |
| | |
| | Appeal from the Circuit Court of St. Louis County Cause No. 18SL-CC03183 and 18SL-PR01711 |
| Appellant, | |
| | Honorable Ellen S. Levy |
| vs. | |
| | Filed: March 15, 2022 |
| STEVEN R. FINLEY AND CYNTHIA D. FINLEY, | |
| | |
| Respondents. | |

## OPINION

This appeal arises from a dispute over the administration of the Susan M. Finley Living Trust, dated October 1, 2002 ("Trust"). There is not yet a final judgment in this case, and we must dismiss the appeal as premature.

## I.  Background

Susan Finley[1] died on June 1, 2017, survived by her two children Karen Finley and Steven Finley. Karen is the trustee of the Trust, which contains all of the assets of Susan's estate. Karen and Steven are the sole beneficiaries. In May of 2018, Steven filed a five-count petition

---

[1] Because all of the parties have the same last name, we refer to them by their first names to avoid confusion. We mean no familiarity or disrespect.

against Karen regarding her handling of the Trust. He asserted that Karen: breached her fiduciary duty by delaying administration of the Trust; was unfit to be the trustee and should be removed; tortiously interfered with Steven's expectation that he would receive half of Susan's estate under the Trust; was unjustly enriched by delaying administration of the Trust; and fraudulently misrepresented the reasons for that delay. Steven sought various remedies: compensatory and punitive damages, attorney's fees, costs, removal of Karen and appointment of Steven as trustee, an accounting, and an order compelling Karen to properly administer the Trust. In October of 2018, Karen filed a multi-count petition against Steven and his wife, Cynthia Finley, to recover unpaid loan amounts allegedly owed to Susan's estate. That case was transferred to the probate division of the circuit court and consolidated with Steven's case.

On January 7, 2019, a Memorandum of Understanding ("MOU") was entered and filed, signed by Karen, Steven, their attorneys and the trial court. The MOU stated "The parties agree that they have reached an agreement settling all issues herein." Among other terms distributing various Trust assets, the parties agreed that Susan's house, known as "Hargrove House," would be distributed to Karen at the value of $335,000.00. Paragraph 9 of the MOU stated: "Cash distribution to Steve[n] of $167,500.00 in consideration of distribution of Hargrove House to Karen." The parties also expressly agreed that they "shall dismiss their respective claims herein, with prejudice, upon satisfaction of all terms of settlement."

On February 19, 2019, the trial court entered an order ("February Order") after a motion hearing at which the parties had agreed to amend certain terms of the MOU. Among other things, the price of a farm to be sold under the MOU was amended and a provision was added stating that the difference in price, $14,000.00, would be withheld "from other funds subject to distribution pending resolution of allocation of said amount" and that "the parties reserve all

other issues for purposes of determining this allocation." Except as amended thereby, the MOU was "to remain in full force and effect."

Despite the above agreements, discontent surrounding the distribution of assets persisted. In the spring and summer of 2019, the parties filed the following motions: (1) Steven filed a motion for sanctions, equitable relief, and accounting, alleging that Karen had not distributed the Trust assets as required by the February Order and asking that Karen be sanctioned with payment of his attorney's fees and for an accounting; (2) Karen filed a counter motion for sanctions, claiming that it was Steven--not Karen--who was violating the terms of the settlement agreement set out in the MOU and February Order; (3) Steven filed another motion for sanctions, equitable relief, and accounting, asserting that Karen continued to breach her fiduciary duties to the Trust and asking the trial court to remove and replace Karen as trustee and award Steven fifty percent of the Trust assets, his costs and attorney's fees; (4) Karen filed another counter motion seeking sanctions, alleging that Steven was trying to pursue the relief sought in his petition, which she maintained was "no longer pending" as a result of the settlement agreement. The trial court held an evidentiary hearing on these four pending motions. Due to what it described as the "wide gamut" of relief requested in these motions, the trial court allowed in evidence pertaining to both Karen's handling of the Trust and to the existence and terms of any settlement agreement.

After the hearing, the trial court entered an Amended Order and Judgment on May 27, 2020 ("2020 Amended Judgment"). At the outset, the trial court recited the procedural history of the litigation and the relevant terms of the MOU and February Order, noting that the parties had agreed that $14,000.00 of the farm sale proceeds would be withheld "from other funds, subject to distribution at a later date." The trial court held that the MOU and February Order "are, and continue to be, a binding settlement agreement enforceable against the parties." The trial court

found an ambiguity in paragraph 9 of the MOU and resolved it by determining that the cash distribution to Steven in consideration for Karen's receipt of the Hargrove House should have been paid from Karen personally or her share of Trust funds, not from the general Trust funds. It entered judgment against Karen and in Steven's favor for $83,750.00 (representing the amount she had been unjustly enriched). "In all other respects, the relief sought in the parties' respective motions is denied." The trial court specifically declined to sanction either party "at this time." Karen filed a motion to amend or vacate the 2020 Amended Judgment, which was denied on August 28, 2020.

Steven sought to hold Karen in contempt of the 2020 Amended Judgment. Karen filed a motion asking the trial court to (1) hold a hearing on and determine how the $14,000.00 should be allocated and distributed, (2) dispose of the underlying claims by the parties raised in their pleadings, and (3) enter a final judgment in this case under Rule 74.01 disposing of all claims and issues, leaving nothing for future determination. After a hearing on these motions, the trial court entered an order denying Steven's motion for contempt without prejudice, stating that the 2020 Amended Judgment was "a final determination of the issues before it" and that the settlement agreement governed "the allocation and distribution of any remaining trust assets." "Further, the parties agreed to dismiss their claims, with prejudice, upon satisfaction of all terms of settlement." The trial court agreed to schedule a hearing on the $14,000.00 issue.

After that hearing, the trial court entered an Order and Consent Judgment on May 25, 2021 ("2021 Consent Judgment"). The trial court found that the settlement agreement did not actually require the trial court to allocate the $14,000.00 and, in fact, by the time of the hearing the parties had already agreed to a fifty-fifty allocation. Therefore, the trial court granted Karen's motion only "as to the entry of the parties' consent allocation of the $14,000.00," and the

4

remainder of her motion was denied. That is, the trial court did *not* grant Karen's request to dispose of the parties' underlying claims or enter a final judgment under Rule 74.01. The court also denied another motion by Steven to hold Karen in contempt of the 2020 Amended Judgment.

The day after the 2021 Consent Judgment, Karen filed a notice of appeal of the 2020 Amended Judgment, claiming the trial court erred in its interpretation of paragraph 9 of the MOU. Shortly thereafter, she voluntarily dismissed her petition against Steven and Cynthia. Steven's petition against Karen has not been dismissed.

Steven has filed a motion to dismiss this appeal. We agree the appeal must be dismissed, but not for the reasons stated in the motion.

## II.    Discussion

To be final and appealable, a judgment must dispose of all parties and all issues in the case and leave nothing for further determination. *Hidritch-Hamann v. Hidritch*, 420 S.W.3d 671, 674 (Mo. App. E.D. 2014). Karen contends that because the 2020 Amended Judgment did not allocate or distribute the $14,000.00, it did not become final until that issue was resolved in the 2021 Consent Judgment. Steven claims that the 2020 Amended Judgment did distribute the $14,000.00 and that judgment became final on September 7, 2020 (ten days after the post-judgment motion was denied), meaning this appeal is untimely. But irrespective of when the $14,000.00 issue was resolved, the 2020 Amended Judgment is still not final for purposes of appeal.

A judgment enforcing a settlement agreement cannot be deemed final for purposes of appeal until all of the underlying claims are dismissed. *See id.*; *Bauman v. Monia*, 905 S.W.2d 127, 128 (Mo. App. E.D. 1995); *see also generally Southwest Parts Supply, Inc. v. Winterer*, 360

5

S.W.3d 349, 352-53 (Mo. App. E.D. 2012). Enforcement of a settlement is an action collateral to the underlying lawsuit and, therefore, not a judgment on the claims in that suit. *See St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, Inc.*, 272 S.W.3d 504, 505 (Mo. App. E.D. 2008). Appeal from a judgment enforcing a settlement agreement, prior to dismissal of the underlying claims, is premature and must be dismissed. *See id.*; *see also Bauman,* 905 S.W.2d at 128.

In this case, although the relief requested in the parties' motions was broad, the only relief granted by the 2020 Amended Judgment was interpretation and enforcement of the terms of the settlement agreement. The remaining relief requested in the motions was denied summarily. While some of the relief sought and allegations regarding Karen's conduct in Steven's motions were *similar* to the allegations and relief sought in his petition, the trial court's summary denial of those motions cannot be fairly characterized as a final disposition of each of the five counts in Steven's petition. Rather, none of the claims in either party's petition were dismissed or otherwise disposed of in the 2020 Amended Judgment.

Nor was there a disposition of any of those underlying claims in the later 2021 Consent Judgment. In fact, in that judgment, the trial court expressly *denied* Karen's request to dispose of the parties' claims and enter a judgment finally disposing of all the issues. As the trial court had pointed out in earlier rulings, the parties agreed in the MOU to "dismiss their respective claims herein, with prejudice, upon satisfaction of all terms of settlement." This settlement agreement, Karen correctly points out, is an "accord executory, *i.e.* an agreement to release an existing claim upon performance." *Bauman*, 905 S.W.2d at 129. An accord executory suspends the underlying claims until such time as the agreement is performed, and the matter remains before the trial court until those claims are dismissed. *Id*. Although Karen has voluntarily dismissed her petition-

-albeit not "with prejudice" as the MOU specifies--no such dismissal of Steven's petition appears in the record. Until the claims in that petition are dismissed, an appeal from the 2020 Amended Judgment is premature.

This appeal is premature even if the distribution of the $14,000.00 had already been resolved in the 2020 Amended Judgment, as Steven contends. That judgment still could not have been deemed final for purposes of appeal in September of 2020 because none of the underlying claims in the parties' petitions had been dismissed or otherwise disposed of at that time. In short, even if Steven is correct about the scope of issues decided by the 2020 Amended Judgment, the appeal is still not too late, it is too early.

For similar reasons, we find no merit to Steven's contention that without an express order continuing judicial supervision over the Trust, the trial court "lost jurisdiction" after the 2020 Amended Judgment and the loss of jurisdiction renders that judgment final and appealable. His reliance on *Wiss v. Spitzmiller*, 425 S.W.3d 157 (Mo. App. S.D. 2014) for this proposition is misplaced. In *Wiss*, the trial court entered a judgment incorporating a settlement agreement that expressly *disposed* of the underlying petition; this was deemed by the appellate court to be a *denial* of the plaintiff's request in that petition to remove trustees. *Id.* at 164, 165.[2] Because the trial court in *Wiss* did not state that it was continuing its judicial supervision over the trust, it had no jurisdiction to issue a subsequent order--wholly inconsistent with the original judgment

---

[2] For similar reasons, we disagree with Karen's claim at oral argument that *McKean v. St. Louis County* is precedent for exercising appellate jurisdiction over this appeal. In *McKean*, this Court rejected an argument that the plaintiff had to bring a separate action to enforce his settlement agreement with one of the defendants and held that a motion to compel is a proper method to enforce a settlement agreement in an action that still has claims pending at the time the motion is filed. 964 S.W.2d 470, 471 (Mo. App. E.D. 1998). We noted on appeal that the judgment enforcing the settlement agreement was final and appealable because all the parties had been "disposed of." *Id*. at 470 n.1 (citing the first appeal, 936 S.W.2d 184, 186 (Mo. App. E.D. 1996), which was dismissed for lack of a final judgment because the claims against the non-settling defendant were still pending). In other words, in *McKean*, the underlying cause of action was pending at the time the motion to compel was filed but by the time of the appeal that action had been "disposed of" with respect to all parties. There is no such disposition of Steven's cause of action yet in this case.

denying such relief--removing a trustee. *Id*. at 165 (citing § 456.2-201 of the Uniform Trust Code, under which a party may invoke the jurisdiction of a court to intervene in the administration of a trust, but the trust "is not subject to continuing judicial supervision unless ordered by the court"). Here, the 2020 Amended Judgment did not incorporate the settlement agreement, which merely suspended--not disposed of--the underlying claims. *See Bauman*, 905 S.W.2d at 129. That is, neither the settlement agreement nor the judgment enforcing it ruled on the relief requested in Steven's petition. In any event, *Wiss* does not suggest that the lack of an express order "continuing judicial supervision" in the 2020 Amended Judgment would render *that* judgment final and appealable in this situation. Rather, that case speaks only to what effect the lack of such an order has on a trial court's jurisdiction to issue *subsequent* rulings about a trust after a final judgment.

We dismiss this appeal *sua sponte* for the reasons stated herein, and not for the reasons stated in Steven's motion to dismiss.[3] That motion is denied. Because there is not yet a final and appealable judgment, we have no jurisdiction to address Steven's requests for attorney's fees.[4] *See* Eastern District Local Rule 400 ("Any party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise *and which the court has jurisdiction to consider*, must do so before submission of the cause") (emphasis added).

---

[3] At the end of her rebuttal at oral argument, Karen requested that if we determine there is no final appealable judgment, we should issue a writ instead to correct the trial court's alleged error in construing paragraph 9 of the MOU. There are limited circumstances in which we may treat an improper appeal as an application for an original writ. *See generally State v. Larson,* 79 S.W.3d 891, 893–94 (Mo. banc 2002). But Karen has not articulated what circumstances warrant that result here, except to assert that the case would remain "in limbo" if the appeal was dismissed because, she claims, there is nothing left for the trial court to do. Because this issue has not been fully developed--and Steven had no opportunity to respond to it--we decline to address the propriety of issuing a writ in this case at this time.

[4] In his brief, Steven requested that his attorney's fees and costs be paid by Karen individually pursuant to the Uniform Trust Code, § 456.10-1004, and that the Trust be barred from paying Karen's attorney's fees and costs associated with this appeal.

### III. Conclusion

The appeal is dismissed.

_____
Colleen Dolan, J.

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

9